UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DIEGO ALBERTO HERNANDEZ GARCIA, | ) |
| *Petitioner*, | ) |
| v. | ) Case No. 3:25-cv-605-DCLC-JEM |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY et al., | ) |
| *Respondents*. | ) |

## **RETURN OF WRIT**

The Court should deny and dismiss the Amended Petition for Writ of Habeas Corpus filed by Petitioner Diego Alberto Hernandez Garcia under 28 U.S.C. § 2241. (First Amended Petition, ECF 11). Neither discovery nor an evidentiary hearing are necessary or appropriate because the controlling facts are not in dispute, and the Petition should be dismissed as a matter of law. The Court lacks subject matter jurisdiction to interfere with the discretionary decision to terminate deferred action to execute the removal order, and Petitioner has made no verifiable claims that his removal will not happen in the reasonably foreseeable future. As such, Petitioner is lawfully detained pursuant to 8 U.S.C § 1231(a), and this Court should not enjoin action taken to remove the Petitioner from the United States. Therefore, this Court should dismiss the petition under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

### I. FACTUAL BACKGROUND

The Petitioner, Diego Alberto Hernandez Garcia ("Petitioner"), brings this action as a petition for habeas corpus under 28 U.S.C. § 2241. (Petition, ECF 1; Amended Petition ECF 11). Petitioner is a citizen of El Salvador and entered the United States as a minor, with his mother and

Case 3:25-cv-00605-DCLC-JEM   Document 15   Filed 12/18/25   Page 1 of 20
PageID #: 94

without inspection, on or about April 27, 2015. (ECF 11, ¶¶ 15-16; *see also* Sept. 8, 2016 Decision of the Immigration Judge, attached as Exhibit 1, at p. 2). On May 20, 2015, the Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner and his mother, alleging that they were inadmissible pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (Exhibit 1 at p. 2).

Thereafter, at a hearing conducted on January 26, 2016, Petitioner and his mother admitted the allegations and conceded the charge of inadmissibility. (*Id.*) On that same date, through counsel,[1] applied for asylum, withholding of removal, and relief under the Convention Against Torture. (*Id.*). On September 8, 2016, an immigration judge denied the Petitioner's claim for asylum, withholding of removal, and Convention Against Torture. (ECF 11, ¶ 17; Exhibit 1 at pp. 12-13; Sept. 8, 2016 Order of the Immigration Judge, attached as Exhibit 2). He was ordered removed from the United States to El Salvador. (*Id.*). The Petitioner timely appealed the decision of the immigration judge to the Board of Immigration Appeals ("BIA"). (*See* BIA Decision, attached as Exhibit 3, at p. 1). On February 23, 2017, the BIA dismissed the Petitioner's appeal. (*Id.*, pp. 1-2).

On February 14, 2019, Petitioner's Form I-360, seeking special immigrant juvenile classification ("SIJ") was approved. (ECF 11, ¶ 18; *see also* ECF 1-1, Approval Notice, stating in part, "The above referenced Form I-360, filed by you, was approved on 02/14/2019."). On May 12, 2022, USCIS issued an amended approval notice to Petitioner for Form I-360 with deferred action. (ECF 11, ¶ 18; ECF 1-1). On December 11, 2025, Immigration and Customs Enforcement ("ICE") encountered Petitioner near a construction site near Hardin Valley Road in Knoxville,

---

[1] Petitioner and his mother were represented by counsel other than Petitioner's counsel of record in the matter currently before the Court.

Tennessee, and took him into custody based on his final order of removal. (*See* ECF 11, ¶¶ 20-21). On the same date, December 11, 2025, the U.S. Citizenship and Immigration Services ("USCIS") issued a Termination Notice terminating Petitioner's period of deferred action that began on May 13, 2022, in connection with Petitioner's approved Form I-360. (*See* Termination Notice Dated Dec. 11, 2025, copy attached as Exhibit 4).[2]

Since December 11, 2025, the Petitioner has been in the custody of ICE at the Knox County Detention Facility. (ECF 11, ¶ 8). At the time of the filing of this Return of Writ, the Petitioner has been detained 7 days.

The original Petition was filed on December 11, 2025, and the First Amended Petition was filed on December 16, 2025. (ECF 1, ECF 11). The gravamen of the Petition is that Petitioner has been unlawfully taken into custody and detained, in violation the Due Process Clause of Fifth Amendment to the United States Constitution. Petitioner also attempts to assert claims for violation of the Administrative Procedures Act (ECF 11, ¶¶ 53-55, 60) and for retaliation in violation of the First Amendment (*Id.* at ¶¶ 56, 61).

## II. LEGAL AND STATUTORY BACKGROUND

### A. Special Immigrant Juvenile Status and Deferred Action

"The Immigration and Nationality Act [INA] of 1990 included a new form of immigration relief for non-citizen children." *Budhathoki v. Nielsen*, 898 F.3d 504, 508 (5th Cir. 2018). Specifically, "Congress established SIJ status in 1990 in order to protect abused, neglected or abandoned children who, with their families, illegally entered the United States, ... and it entrusted

---

[2] To the best of the undersigned's knowledge, information and belief based on diligent inquiry, it appears that the Notice of Termination was likely issued after Petitioner came into custody, and likely before the original Petition was filed with the Court. For the reasons explained in this return brief, however, the precise timing of the termination is immaterial.

3

Case 3:25-cv-00605-DCLC-JEM   Document 15   Filed 12/18/25   Page 3 of 20
PageID #: 96

the review of SIJ petitions to USCIS, a component of DHS." *Osorio-Martinez v. Attorney General United States of America*, 893 F.3d 153, 162 (3d Cir. 2018) (quotations and citations omitted). An individual can obtain SIJ classification when the applicant (1) is declared dependent on a juvenile court, (2) has an administrative or judicial proceeding finding it would not be in the juvenile's best interest to be returned to the previous country they lived in, and (3) receives consent from the secretary of the Department of Homeland Security. *L.F.O.P. v. Mayorkas*, 656 F. Supp. 3d 274, 276 (D. Mass. 2023). An individual with SIJ status can apply for adjustment of status if they are eligible, admissible, and an immigrant visa is immediately available. 8 U.S.C. § 1255; 8 C.F.R. § 245.1(e)(3)(i). If an application for adjustment of status is granted, the individual receives Lawful Permanent Resident status, i.e. a green card. 8 U.S.C. § 1255(a).

Under the INA, to adjust status, "an immigrant visa [must be] immediately available" at the time an application is filed and adjudicated. 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(a). A limited number of immigrant visas to allow adjustment of status for SIJs are available each year. In 2022, USCIS recognized that "[d]ue to ongoing visa number unavailability, the protection that Congress intended to afford SIJs through adjustment of status is often delayed for years …." USCIS Policy Alert-2022-10.[3] As such, USCIS updated its policy guidance "to provide that USCIS will consider granting deferred action on a case-by-case basis to noncitizens classified as SIJs who are ineligible to apply for adjustment of status solely due to unavailable immigrant visa numbers." *Id.* USCIS made clear, however, that "[n]oncitizens without lawful status who have an approved SIJ petition remain subject to removal" because "SIJ classification does not render a noncitizen lawfully present, does not confer lawful status, and does not result in eligibility to apply for employment

---

[3] https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf

4

authorization." *Id.* Ultimately, an individual who obtains SIJ status receives several benefits, but is still subject to arrest, detention, and removal from the United States if a final order of removal is or has been entered against such individual. *See United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018) (Explaining that while "[t]he SIJ program offers aliens a multitude of benefits and protections, including the opportunity to seek lawful permanent resident status[,] … [i]n and of itself, though, an SIJ designation does not strip the U.S. government of all removal powers.") This is true even if the individual has been granted deferred action by USCIS.

In this case, Petitioner has not obtained Lawful Permanent Resident status (a green card), and a final order of removal was entered against him in 2016. Therefore, even considering that Petitioner was granted SIJ status by USCIS and placed in deferred action on May 12, 2022, the fact remains that he is a non-citizen with a final order of removal. And USCIS has now terminated the deferred action Period. As set forth below, his grant of SIJ status and deferred action have no impact upon the ability of ICE to detain Petitioner pursuant to 8 U.S.C.A. § 1231 pending his removal, or a decision by the immigration court that he cannot be removed.

### B. Detention of Aliens Pending Removal

"The Immigration and Nationality Act (INA) establishes procedures for removing aliens living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). "If the immigration judge decides that the alien is inadmissible or deportable and that the alien is not entitled to any of the relief or protection that he requested, the immigration judge will issue an order of removal." *Id.* at 528 (citing 8 U.S.C. § 1229a(c)(5)).

The INA provides a statutory scheme for the civil detention of aliens pending a decision during removal proceedings as well as once a final order of removal has been entered. *See generally* 8 U.S.C. §§ 1225, 1226, 1231. The time and circumstances of entry, as well as the stage

of the removal process, determines where an alien falls within this scheme and whether detention of the alien is discretionary or mandatory.

The statute referring to a 90-day removal period after a final order of removal has been entered, 8 U.S.C. § 1231(a)(1)(A), holds: "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." *Martinez v. Larose*, 968 F.3d 555, 559 (6th Cir. 2020).

"The removal period is defined as beginning on the latest of three events: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* at 559–60 (citing 8 U.S.C. § 1231(a)(1)(B)).

Regarding detention beyond the 90-day period, 8 U.S.C. § 1231(a)(6) states:

> *An alien ordered removed who is inadmissible under section 1182 of this title*, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to the terms of supervision in paragraph (3).

(Emphasis added). "§ 1231(a)(3) allows for supervised release after the 90-day removal period expires '[i]f the alien does not leave or is not removed' during that time period." *Johnson v. Guzman Chavez*, 594 U.S. 523, 538 (2021).

Once the 90-day removal period has elapsed, the alien becomes subject to 8 U.S.C. § 1231(a)(6) which makes detention discretionary. *Arizona v. Biden*, 40 F.4th 375 (6th Cir 2022); *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 639 (D. Mass. 2018). "Continued detention under this provision creates the 'post-removal-period.'" *Johnson*, 594 U.S. at 529. "[I]n enacting § 1231,

6

Congress and the President anticipated that not all aliens ordered removed would be deported during the removal period. *See* § 1231(a)(3) (referring to 'an alien' who 'does not leave ... within the removal period')." *Jimenez*, 317 F. Supp. 3d at 651. Thus, 8 U.S.C. § 1231 expressly anticipates detention beyond the 90-day removal period.

### III. LAW AND ARGUMENT

Petitioner seeks declaratory relief and release from detention and for this Court to enjoin his pending removal. Despite having a valid final order of removal, and despite his deferred action period having now been terminated, Petitioner argues that he is unlawfully detained (in violation of due process rights under the Fifth Amendment to the U.S. Constitution) because the action of USCIS in granting Petitioner deferred action status in 2022 protects "against an execution of a removal order during the time that it remains effective." (Amended Petition, ECF 11, ¶¶ 52, 58, p. 14). Further, he appears to question the authenticity, timing and basis for USCIS's termination his deferred status, claiming that the termination was arbitrary and capricious in violation of the Administrative Procedures Act, and potentially retaliatory in violation of the First Amendment to the U.S. Constitution. (*Id.*, ¶¶ 31-37, 53-61). However, Petitioner misconstrues the law. The issue for the Court's consideration under the Petition is whether ICE has the authority to detain Petitioner. It does. Petitioner is subject to a final order of removal. Deferred action does not change that fact. It does not convey lawful resident status, and it does not preclude detention pending removal. It merely delays physical removal from the United States until the deferred action period expires or is terminated – and there is no dispute that USCIS has terminated Petitioner's deferred

7

Case 3:25-cv-00605-DCLC-JEM Document 15 Filed 12/18/25 Page 7 of 20 PageID #: 100

action period. Moreover, both the grant and the termination of deferred action are committed to the absolute discretion of USCIS, and are not reviewable.

In sum, Petitioner's claims fail as a matter of law. Petitioner is asking this Court to stop his removal, which this Court has no jurisdiction to do. Thus, the Court should deny and dismiss his Petition.

### A. Standard of Review

This Court should begin its analysis with the threshold issue of "whether this the Court has subject matter jurisdiction." *See e.g., Zhen v. Doe*, Case No. 3:25-cv-01507, 2025 WL 2258586 (N.D. Ohio Aug. 7, 2025) (citing *Karki v. Jones*, Case No. 1:25-cv-281, 2025 WL 1638070, at *3 (S.D. Ohio June 9, 2025) ("The fundamental question of subject matter jurisdiction must precede any analysis of the merits on this matter.").

The jurisdiction of the federal courts is presumptively limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts are courts with limited jurisdiction and may only hear cases that are "authorized by Constitution and statute." *Id.* If at any time, the court determines that it lacks subject-matter jurisdiction, that court must dismiss the action in front of them. *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.*, 930 F.2d 1132 (6th Cir. 1991).

The requirement that a plaintiff establish subject-matter jurisdiction "as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (some internal quotation marks omitted).

A motion under Fed. R. Civ. P. 12(b)(1) can raise facial or factual attacks. *W6 Rest. Grp., Ltd v. Loeffler*, 140 F.4th 344, 349 (6th Cir. 2025). Regardless of which attack is used, the plaintiff

bears the burden of persuading the Court that subject matter jurisdiction exists. *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 671 (6th Cir. 2005).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether that plaintiff has pleaded a cognizable claim in his or her complaint. "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation omitted).

A court should dismiss a claim under Rule 12(b)(6) when the plaintiff or petitioner has failed to plead "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A complaint need not contain detailed factual allegations but must raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

The Court should deny the Petition because this Court lacks subject-matter jurisdiction over his claims because 8 U.S.C. § 1252, *et seq.*, precludes the review. Even if the Court had jurisdiction, however, Petitioner still fail to plead plausible claims for relief.

### B. This Court Lacks Jurisdiction

#### 1. This Court Lacks Jurisdiction Pursuant to 8 U.S.C. § 1252.

Petitioner's challenge to his detention challenges his imminent removal. The Court lacks jurisdiction to hear a challenge to Petitioner's removal under 8 U.S.C. § 1252. As such, this Court

should deny the Petition and dismiss this action for lack of subject matter jurisdiction. In enacting the REAL ID Act, Congress limited the jurisdiction of federal courts through 8 U.S.C. § 1252(g) as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), *including section 2241 of title 28,* or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). "In the REAL ID Act, Congress decided that, as a matter of public policy, [federal courts] do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order." *Rranxburgaj v. Wolf,* 825 F. App'x 278, 283 (6th Cir. 2020). This holds true "whether or not [federal courts] agree with ICE's decision to execute [a petitioner's] removal order." *Id.*

These types of claims are barred under 8 U.S.C. §1252(g). This statute bars claims arising from the three discrete actions identified in § 1252(g), including, as relevant here, the decision or action to "execute removal orders." Congress spoke clearly, emphatically, and repeatedly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. 8 U.S.C. § 1252(g). Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 (as well as review pursuant to the All Writs Act and Administrative Procedure Act) of claims arising from a decision or action to "execute" a final order of removal. *See Reno v. American-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 482 (1999).

The Sixth Circuit as well as other Courts of Appeals have consistently held that similar petitioners' challenges to removal are barred by § 1252(g). *Hamama v. Adducci*, 912 F.3d 869,

874–77 (6th Cir. 2018) (vacating district court's injunction staying removal, concluding that § 1252(g) stripped district court of jurisdiction over removal-based claims and remanding with instructions to dismiss those claims); *see also Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."); *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021) (rejecting the argument that jurisdiction remained in similar circumstances because petitioner was challenging, DHS's legal authority as opposed to its "discretionary decisions"); *Tazu v. Att'y Gen., U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the statute") (emphasis in original); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (Section 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim").

Section 1252(g) therefore limits jurisdiction as it relates to claims arising from such execution of removal orders—even if federal question jurisdiction would otherwise be proper. *See Elgharib v. Napolitano,* 600 F.3d 597, 607 (6th Cir. 2010). By its terms, this statutory limitation also applies to habeas relief under 28 U.S.C. § 2241, which would typically provide jurisdiction over cases where an alien is held in custody in violation of the Constitution or the laws of the United States. *Zadvydas v. Davis,* 533 U.S. 678, 687 (2001).

2. <u>Sections 1252(a)(5) and (b)(9) Bar Review of the Petitioner's Claims</u>.

This Court also lacks jurisdiction over the Petitioner's claims concerning removal orders issued under section 1229a given 8 U.S.C. § 1252(a)(5) and (b)(9). Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). Section 1252(a)(5) provides that [n]otwithstanding any other provision of law (statutory or nonstatutory) . . . or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . ."

In relation to Section 1252(a)(9), the Sixth Circuit has explained that district courts "are prohibited from reviewing and vacating a removal order." *Hamdi v. Napolitano*, 620 F.3d 615, 625 (6th Cir. 2010); *see also Lopez-Meija v. Lynch*, Case No. 1:16-cv-549, 2017 WL 25501, at *5 (S.D. Ohio Jan. 3, 2017). In fact, the First Circuit has noted that § 1252(b)(9)'s "expanse is breathtaking." *Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 9-12 (1st Cir. 2007).

The Petitioner could have appealed his removal order pursuant to the administrative process, 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c), or may seek an emergency stay of removal

12

as a part of the administrative process.[4] *See generally* 8 C.F.R. § 1003.2(f), 1003.23(b)(v). Because the Petitioner's requested relief arises from and "action taken . . . brought to remove" the Petitioner "from the United States" and is a petition for habeas corpus, this Court lacks jurisdiction. § 1252(b)(9).

Thus, to obtain habeas relief, the Petitioner must not merely show that he is "in custody," but rather that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Dickerson v. United States*, 530 U.S. 428, 439, n.3 (2000) ("Habeas corpus proceedings are available only for claims that a person 'is in custody in violation of the Constitution or laws or treaties of the United States,'" quoting 28 U.S.C. § 2254(a)). The Petitioner does not meet that burden. Therefore, this Court lacks jurisdiction to consider the Petitioner's challenge to his detention and pending removal. Thus, the Petition should be denied and dismissed.

### C. The Petitioner's Detention Pending Removal is Lawful

1. Neither Petitioner's SIJ Status nor the Granting of a Deferred Action Period (Now Terminated) by USCIS Preclude Petitioner's Detention Pending Removal.

The Petitioner does not contest the fact that he has a valid and final removal order. He also does not contest that he is inadmissible under 8 U.S.C. § 1182. He claims, instead, that his "detention is unconstitutional and unlawful, as it violates his deferred action under his SIJ classification and violates the Fifth Amendment guarantee of due process." (ECF 11 at p. 14). Further, he dismisses the fact that USCIS has now terminated his deferred action period under the

---

[4] In addition, according to the archived Visa Bulletins published by the U.S. Department of State, over the last 5 years there have been multiple opportunities for petitioner to seek adjustment of status when immigrant visas were available, including from July 2022 through March 2025. https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html

13

theory that USCIS did not articulate a basis for the termination, and that it was an act of retaliation for filing a habeas petition. (*Id.* at ¶ 31-37, 53-61). Petitioner's assertions miss the mark. Regardless of SIJ status and the grant of deferred action, Petitioner remains an alien removable under 8 U.S.C.A. § 1231.

Multiple courts have explained that SIJ designation does not forestall arrest, detention and removal from the United States if an alien is subject to a final order of removal. For example, the U.S. Court of Appeals for the Third Circuit considered, and answered in the affirmative, the question of whether an SIJ recipient is subject to removal on account of his inadmissibility to the United States. *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 432 (3d Cir. 2023). In that case, the individual was charged as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) which provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." While this ground of inadmissibility does not prevent an SIJ designee from applying for adjustment of status, *see* 8 U.S.C. § 1255(h)(2), the court found that it does apply for purposes of *removal*. *Id.* at 433. The Third Circuit reasoned that "Congress could have rationally decided that SIJS recipients should be given the opportunity to apply for adjustment of status, while also contemplating that they may be removed if their application is denied or for another appropriate basis." *Id.*, n.11.

Similarly, in *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018), the district court held that "an SIJ designation does not strip the U.S. government of all removal powers." Instead, "the government retained the power to arrest, detain, and remove Granados-Alvarado in spite of his SIJ status" because of his inadmissibility to the United States. *Id.* The court explained that "§ 1255(h) does not accord Granados-Alvarado parolee status for any purposes

14

other than for his application for adjustment of status. … It does not make his presence lawful …". *Id.* at 362. *See also, Cruz-Gonzalez on behalf of D.M.S.C. v. Kelly*, No. CV 16-5727, 2017 WL 3390234, at *5 (E.D. Pa. Aug. 7, 2017) (rejecting argument that SIJ approval grants lawful status and prevents removal from the United States and also agreeing with government's argument that being "deemed paroled" under 8 U.S.C. § 1255(h) "does not cancel a final order of removal or an underlying basis of inadmissibility or removability."). Here, USCIS's approval of Petitioner's SIJ petition did not provide him with lawful immigration status in the United States and does not bar ICE from arresting and detaining him for purposes of removal.

Petitioner's claim that detention is unlawful because USCIS previously issued him deferred action is likewise without merit. First, it is without dispute that USCIS has now terminated Petitioner's deferred action period. Additionally, and more importantly, like SIJ classification deferred action does not provide lawful status.[5] Petitioner has cited to no authority to the contrary that is binding upon this Court. The face of the notice approving deferred action for Petitioner is clearly marked:



(ECF 1-1). The notice also makes clear that deferred action merely places the non-citizen in a "lower priority" for removal for a specific period of time, "unless terminated earlier by USCIS."

---

[5] https://www.uscis.gov/archive/uscis-to-offer-deferred-action-for-special-immigrant-juveniles

15

> **Grant of Deferred Action:**
>
> you warrant a favorable exercise of discretion to receive deferred action. As a result, you have been placed in deferred action and you may [...] employment authorization document. Deferred action is an act of administrative convenience to the government which gives some individuals lower priority for removal from the United States for a specific period of time. Your grant of deferred action will remain in effect for a period of four years from the date of this notice, unless terminated earlier by USCIS.

It does not preclude removal, let alone detention. (*Id.*). Moreover, both the decisions to grant, and to terminate, deferred action upon a non-citizen with SIJ status is committed to the sound and absolute discretion of USCIS. The USCIS Policy Manual states, in part "[i]f USCIS previously granted deferred action to an alien with SIJ classification in the exercise of discretion, the alien's deferred action remains valid for the authorized period, *unless terminated by USCIS, on a case-by-case basis, as a matter of discretion*." (6 USCIS-PM J.4(G)(1)) (emphasis added).[6] Consistent with that, the immigration regulations at Title 8 C.F.R. contain no provision for appealing the termination of deferred action. And the December 11, 2025 Notice of Termination from USCIS states, in part, ". . . [USCIS] has individually reviewed your case and exercised discretion to terminate your period of deferred action, which began on May 13, 2022, in connection with your approved Form I-360 . . . [SIJ]." (Termination Notice, Exhibit 4). It continues: "Deferred action is a discretionary determination, however, to defer immigration enforcement action against an individual as an act of prosecutorial discretion. *You may not appeal or move to reopen/reconsider this decision*." (*Id.*) (emphasis added).

      Finally, USCIS – which may grant and terminate deferred action status – is an agency separate from ICE – which executes orders of removal. And even assuming *arguendo* that a grant of deferred action rendered a removal order temporarily "unenforceable," as Petitioner contends

---

[6] Accessible at https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4 (last accessed 12/17/2025).

(*see* Amended Petition, ECF 11 at ¶ 52),[7] there is no question that ICE has authority to detain the Petitioner during the removal process. "Detention during removal proceedings is a constitutionally permissible part of [the removal] process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). This is even more so where the deferred action period has, in the discretion of USCIS, been terminated.

For all the foregoing reasons, the Petitioner's detention is not in violation of the Constitution or laws or treaties of the United States. Consequently, this Court lacks subject matter jurisdiction, and the Petition should be denied and dismissed.

### 2. The Petitioner was Afforded Due Process.

The Supreme Court has long recognized that immigration-related decisions of executive branch officers as in this case afford due process in the absence of judicial review. "[A]s to 'foreigners who have never been naturalized, nor acquired any domicile or residence within the United States, nor even been admitted into the country pursuant to law,' 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)). "Since then, the [Supreme] Court has often reiterated this important rule." *Id.* (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)), *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953), and *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

---

[7] Petitioner's reliance on *Enriquez-Perdomo v. Newman*, 54 F.4th 855 (6th Cir. 2022) is not availing. First, the deferred action at issue in *Enriquez-Perdomo* was granted under the Deferred Action for Childhood Arrivals program ("DACA"), which is governed by different regulations (8 C.F.R. §§ 236.21-236.25) than the deferred action in the instant case (8 C.F.R. § 274a.12(c)(14)). Moreover in *Enriquez-Perdomo*, unlike in the instant case, it appears that the government did not terminate the non-citizen's DACA status. 54 F.4th at 858.

17

The essential requirements of procedural due process are: (1) notice; and (2) an opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970); *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988). The Petitioner does not contest that he entered the United States without a valid visa or entry document. Further, the Petitioner appealed his removal to the BIA, the BIA dismissed his appeal, and it appears no further review was sought. The Petitioner therefore has notice of why he was detained and has had ample opportunity to be heard. Accordingly, his due process argument is without merit and his due process claim must fail.

### D. Petitioner's APA Claims Should Be Dismissed

Petitioner improperly attempts to shoehorn APA claims into a habeas action. (*See* Amended Pet., ECF 11, ¶¶ 53-55, 60, Prayer for Relief). This is not an APA case. It is black-letter law that habeas petitioners are limited to challenging the fact or duration of their confinement, not the conditions of that confinement or the agency policies governing it. *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020); *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). And, as a prudential matter, courts in this circuit have not permitted "combined habeas corpus and other civil claims to proceed together in one case." *J.O.B. v. United States*, No. 3:23-CV-217, 2024 WL 4011825, at *7 (S.D. Ohio Aug. 30, 2024) (collecting cases), *R. & R. adopted*, No. 3:23-CV-217, 2024 WL 4223636 (S.D. Ohio Sept. 18, 2024); *Ruza v. Michigan*, No. 1:20-CV-504, 2020 WL 4670556, at *2 (W.D. Mich. Aug. 12, 2020), *aff'd*, No. 20-1841, 2021 WL 3856305 (6th Cir. Apr. 7, 2021) (same). Habeas petitions and civil actions "have distinct purposes and contain unique procedural requirements that make a hybrid action difficult to manage." *Ruza*, 2020 WL 4670556, at *2. Thus, Petitioner's APA claims are improperly pleaded, and the Court should not consider them alongside his petition for writ of habeas corpus.

In addition, APA claims are unavailable where habeas relief presents an adequate alternative remedy. *Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring).

Habeas relief would be an adequate remedy for Petitioner's claims, by addressing whether he is entitled to release from unlawful custody. That "fall[s] within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Id.* at 672 (per curium).

Petitioner's APA claims are not properly before the Court.

### E. Petitioner's First Amendment Claim for Retaliation Should Be Dismissed

For similar reasons, Plaintiff's claim for "retaliatory conduct" in terminating Petitioner's deferred action in violation of the First Amendment, are not properly before the Court in a habeas action. And even if such a claim could properly be asserted in the Petition, Petitioner has not alleged facts sufficient to state a viable claim for which relief can be granted. Specifically, Petitioner's assertion that USCIS terminated Petitioner's deferred action "after he exercised his legal right to defend himself in court by filing a habeas petition" (ECF 11 at ¶ 61), is based largely, if not entirely, on insinuation and speculation and is not supported by the record. Moreover, as explained *supra* at pp. 14-16, the decision to terminate a non-citizen's deferred action period is entirely within the discretion of USCIS and may be based on administrative convenience.

Petitioner's claim for First Amendment retaliation should be dismissed.

## VI. CONCLUSION

The Petitioner's detention pending removal is lawful. The Petitioner's removal is lawful and this Court lacks jurisdiction to enjoin action taken to effect the Petitioner's removal to El Salvador. Accordingly, this Court should deny relief and dismiss the action.

*[Signatures on next page]*

19

Respectfully submitted,

FRANCIS M. HAMILTON III
United States Attorney

*/s/ Robert C. McConkey III*
Robert C. McConkey III (BPR # 018118)
Ben D. Cunningham (BPR # 030122)
Assistant United States Attorneys
800 Market Street, Suite 211
Knoxville, TN 37902
(865) 545-4167
Robert.McConkey@usdoj.gov
Ben.Cunningham@usdoj.gov
*Counsel for Respondents*