UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DIEGO ALBERTO HERNANDEZ GARCIA, )
)
Petitioner, )
)
v. ) No. 3:25-CV-00605-DCLC-JEM
)
MARKWAYNE MULLIN,[1] SECRETARY )
OF THE UNITED STATES DEPARTMENT OF )
HOMELAND SECURITY et al., )
)
Respondents. )

**MEMORANDUM OPINION AND ORDER**

The Due Process Clause guarantees an alien facing removal notice and a meaningful opportunity to be heard before a neutral decisionmaker. Petitioner Diego Alberto Hernandez Garcia received both. In 2016, an immigration judge heard his applications for asylum, withholding of removal, and protection under the Convention Against Torture; denied them; and entered a final order of removal. The Board of Immigration Appeals affirmed. He did not petition the court of appeals for review. He nonetheless remained in the United States, where he later received a discretionary grant of deferred action that, by its express terms, the United States Citizenship and Immigration Services ("USCIS") could revoke at the agency's election. USCIS revoked it. Mr. Hernandez Garcia now seeks a writ of habeas corpus on the theory that the Constitution required additional process before that revocation. It did not. His petition is therefore **DENIED**.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Markwayne Mullin, who was confirmed as Secretary of Homeland Security on March 24, 2026, is automatically substituted for Kristi Noem as a respondent in her official capacity. The Clerk is directed to update the docket accordingly.

## I. BACKGROUND

Petitioner Diego Alberto Hernandez Garcia is a twenty-four-year-old Salvadoran national. He entered the United States as a minor on or about April 27, 2015, without inspection, and has remained in the country since. [Am. Pet., Doc. 11, ¶¶ 15–16;[2] Decision of Immigr. Judge, Doc. 15-1, at 2, 5].

In 2016, Mr. Hernandez Garcia applied for asylum, withholding of removal, and protection under the Convention Against Torture [Am. Pet., Doc. 11, ¶ 17]. An immigration judge denied those applications and ordered his removal to El Salvador. [*Id.*]. The Board of Immigration Appeals affirmed. [Am. Pet. ¶ 17; Decision of Immigr. Judge at 12–13; Removal Order, Doc. 15-2, at 1; Decision of Bd. of Immigr. Appeals, Doc. 15-3, at 1–2]. He remained in the United States through 2019,[3] at which point he applied for Special Immigrant Juvenile Status ("SIJ status"). [Am. Pet., Doc. 11, ¶ 18]. Established by Congress in 1990, SIJ status is a form of relief from removal for a foreign-born child who has suffered "abuse, neglect, abandonment, or similar" treatment and has received an administrative or judicial ruling stating that "it would not be in [his] best interest to" return to his home country or his previous country of residence. 8 U.S.C. § 1101(a)(27)(J)(i) and (ii).

In 2022, USCIS, a division of the Department of Homeland Security ("DHS"), created a deferred-action program known as "SIJS-DA" for young adults with SIJ status. U.S. Citizenship & Immigr. Servs., *Policy Alert, PA-2022-10, Special Immigrant Juvenile Classification and*

---

[2]    Mr. Hernandez Garcia's amended petition is verified under 28 U.S.C. § 2242, and it "therefore carries the same weight as would an affidavit," *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citations omitted).

[3]    "When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (quoting 8 U.S.C. § 1231(a)(1)(A)).

*Deferred Action* (Mar. 7, 2022).[4] For non-citizens facing removal from the United States, a grant of deferred action is "an act of administrative convenience to the government that gives some cases lower priority." 8 C.F.R. § 274a.12(c)(14); *cf. id.* § 236.21(c)(1) (defining "deferred action" as "a form of enforcement discretion not to pursue the removal of certain aliens for a limited period . . . taking into account humanitarian considerations and administrative convenience").[5] Under the SIJS-DA program, deferred action allows non-citizens with SIJ status to "apply for, and be granted employment authorization for the period of deferred action. . . ." U.S. Citizenship & Immigr. Servs., *Policy Alert, PA-2022-10*, *Special Immigrant Juvenile Classification and Deferred Action* at 2.

On May 12, 2022, USCIS issued an amended approval notice for Mr. Hernandez Garcia's Form I-360 petition that placed him in deferred action under the SIJS-DA program and rendered him eligible to apply for employment authorization. [Am. Pet. Doc. 11, ¶ 18; Notice of Deferred Action, Doc. 1-1, at 1]. The notice states: "Your grant of deferred action will remain in effect for a period of four years from the date of this notice, unless terminated earlier by USCIS." [*Id.*]. By its own terms, his deferred-action status was set to expire on May 12, 2026.

On December 11, 2025, officers of the United States Immigration and Customs Enforcement ("ICE") apprehended Mr. Hernandez Garcia at a construction site in Knoxville, Tennessee. [Am. Pet., Doc. 11, ¶¶ 20–21]. Later that day, USCIS terminated his deferred-action status. [Termination Notice, Doc. 6-1, at 1–2]. He has remained in ICE custody since his

---

[4]     This policy alert is available on USCIS's website at https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf.

[5]     This definition of deferred action applies specifically to deferred action under the program known as "Deferred Action for Childhood Arrivals," or "DACA," which is not at issue in this case.

apprehension, initially at the Roger D. Wilson Detention Facility in Knoxville, [*id.* at 1], and now at the Alexandria Staging Facility in Louisiana, [Resp'ts' Notice, Doc. 21, at 1].[6]

## II.    PROCEDURAL HISTORY

Following his arrest, Mr. Hernandez Garcia, through his attorney, petitioned the Court for a writ of habeas corpus, contending that his detention violates the Due Process Clause of the Fifth Amendment of the United States Constitution because he did not first receive "an individualized determination" before Respondents terminated his deferred-action status. [Am. Pet., Doc. 11, at pg. 14]. He claims that his deferred-action status operates as "a shield against an execution of a removal order" and "prevents immigration authorities from physically removing" him. [*Id.* ¶ 58]. In petitioning the Court for a writ of habeas corpus, he requests his "release . . . from custody." [*Id.* at pg. 14]. In addition, he brings separate civil claims against Respondents—the Secretary of the United States Department of Homeland Security, other government officials, and government agencies—alleging they have violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and have engaged in retaliatory conduct in violation of the First Amendment. [*Id.* ¶¶ 56, 61].

Contemporaneously with his habeas petition, Mr. Hernandez Garcia requested an emergency stay of removal. [Pet. for Emergency Stay of Removal, Doc. 2]. After considering the factors for a stay under *Nken v. Holder*, 556 U.S. 418 (2009), the Court stayed all outstanding orders for Mr. Hernandez Garcia's removal and ordered his release pending adjudication on the

---

[6]      When Mr. Hernandez Garcia filed his original petition for a writ of habeas corpus, he was detained in the Roger D. Wilson Detention Facility in Knoxville, and Respondents do not argue that venue is improper in the Eastern District of Tennessee. The Court therefore has venue over this action. *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" (quotation omitted)).

merits. [Mem. Op. & Order, Doc. 4, at 3–5]. The Court's preliminary assessment rested on his deferred-action status as it then stood, before USCIS terminated it.

Respondents concede that the Termination Notice "was likely issued after Petitioner came into custody, and likely before the original Petition was filed with the Court." [Return of Writ, Doc. 15, at 3 n.2]. Following the Court's emergency stay of removal, Respondents moved to stay the order of release pending a challenge to the Court's jurisdiction. [Resp'ts' Mot. to Stay Release, Doc. 6, at 1–2]. In light of the termination of Mr. Hernandez Garcia's deferred-action status, the Court stayed its order of release pending consideration of the habeas petition on the merits. [Mem. Op. & Order, Doc. 7, at 3–4].

At a subsequent hearing, Mr. Hernandez Garcia sought jurisdictional discovery in response to Respondents' argument that the Court lacks jurisdiction over his habeas petition. The Court took the request under advisement and ordered briefing under 28 U.S.C. § 2248. [Order, Doc. 18, at 2]. The Court further reserved ruling on the need for an evidentiary hearing pending receipt of the parties' submissions.

On December 23, 2025, Respondents advised the Court that Mr. Hernandez Garcia had been mistakenly placed on a flight to El Salvador in violation of the Court's stay. [Order, Doc. 20]. He was promptly returned to the United States and remains detained at the Alexandria Staging Facility in Louisiana. [Resp'ts' Notice, Doc. 21]. The inadvertent removal does not bear on the disposition that follows, which turns on the lawfulness of his current detention.

## III.   ANALYSIS

The Court sets out where the case left off: with the need for jurisdictional discovery and an evidentiary hearing. The Court has jurisdiction over Mr. Hernandez Garcia's habeas petition, for the reasons that it will go on to explain in this Opinion, so his request for jurisdictional

5

discovery is **DENIED AS MOOT**. Also, the issues that he presents in his habeas petition are issues of law, and those issues are whether his deferred-action status shields him from removal and whether Respondents can legally terminate his deferred-action status without due process of law. [Am. Pet., Doc. 11, at 13–14; Pet'r's Resp., Doc. 23, at 1, 4]. An evidentiary hearing on these issues is unnecessary as they are pure questions of law. Mr. Hernandez Garcia's habeas petition, which he has verified under 28 U.S.C. § 2242 and therefore has the same effect as an affidavit, *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008), and the other documents in the record will suffice to support a ruling on the merits.

In addition, the Court would be remiss if it did not mention that Mr. Hernandez Garcia raises a new claim in his response, asserting a "de facto revocation of SIJS through deportation without following minimal due process requirements." [Pet'r's Resp. Doc. 23 at pg. 8]; *see* [Resp'ts' Reply, Doc. 25, at 2 (contending that "Petitioner raises a claim that is not made in the Petition.")]. The Court was explicit in its instruction that Mr. Hernandez Garcia was "not [to] raise new claims" in his response. [Order, Doc. 18, at 2]. This new claim is not properly before the Court because raising not only violated the Court's order but also violated Federal Rule of Civil Procedure 15 as he already amended his petition once as a matter of course and therefore needed to obtain either the Court's leave or Respondents' consent to amend it a second time. Fed. R. Civ. P. 15(a)(1)–(2).[7] He obtained neither.

---

[7]     Mr. Hernandez Garcia does not bring his habeas petition under 28 U.S.C. § 2254, but nonetheless, "[t]he district court may apply any or all of these [habeas] rules to a habeas corpus petition" not brought under § 2254. Rules Governing Section 2254 Cases in the United States District Courts 1(b). "The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these [habeas] rules, may be applied to a proceeding under these [habeas] rules." Rules Governing Section 2254 Cases in the United States District Courts 12; *see* Fed. Rule Civ. P. 81(a)(2) (The civil rules "are applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (b) has previously conformed to the practice in civil actions.").

6

The Court is therefore without discretion to consider his claim that his removal without due-process protections would constitute an unlawful termination of his SIJ status, particularly in light of Respondents' opposition to this claim as improper because it was "not made in the petition." [Resp'ts' Reply, Doc. 25 at pg. 2]; *see Bank of N.S. v. United States*, 487 U.S. 250, 255 (1988) (The "federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions."); *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844 (6th Cir. 2020) (declaring that the Federal Rules of Civil Procedure "are *binding* upon court and parties alike, with fully the force of law" (emphasis added) (citing *id.*)). But even without this claim, Mr. Hernandez Garcia's original claim that his deferred-action status shields him from removal without due process, [Am. Pet. ¶ 58], suffices for the Court to consider the habeas relief that he requests from the Court.

### A. The Writ of Habeas Corpus

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and "the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Brown v. Allen*, 344 U.S. 443, 533 (1953) (Jackson, J. concurring) ("The historic purpose of the writ has been to relieve executive detention without judicial trial." (footnote omitted)). An "indispensable mechanism for monitoring the separation of powers" in "our tripartite system of government,"[8] *Boumediene v. Bush*, 553 U.S. 723, 765 (2008), the writ of habeas corpus is codified in 28 U.S.C. § 2241, which states that "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions" so long as the petitioner "is in custody in violation of the Constitution or laws or

---

[8] Our Founding Fathers' "distrust of governmental power was the driving force behind the constitutional plan that allocated powers among three independent branches. *Boumediene*, 553 U.S. at 742.

treaties of the United States." 28 U.S.C. § 2241(a), (c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004) ("Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" (quoting 28 U.S.C. § 2241(a), (c)(3)).

Although Congress has preserved the writ of habeas corpus by codifying it in § 2241, it is "antecedent" to any statute; it is a timeless remedy, with "root[s] deep into the genius of our common law" and "English law." *Id.* (internal quotation mark omitted) (quoting *Williams v. Kaiser*, 323 U.S. 471, 484 n.2 (1945))). Indeed, the Framers of our Constitution "viewed freedom from unlawful restraint as a fundamental precept of liberty," "understood the writ of habeas corpus as a vital instrument to secure that freedom," and "counseled the necessity for specific language in the Constitution to secure the writ." *Boumediene*, 553 U.S. at 739–40. And secure it in the Constitution, they have: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, § 9, cl. 2.

This writ's protection against the deprivation of individual liberty is at its zenith when a petitioner calls on the federal judiciary to review the Executive Branch's authority to detain him. *See Boumediene*, 553 U.S. at 783 ("Where a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing."); *id.* at 797 ("[F]ew exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."). The "more urgent" need for judicial scrutiny of executive detentions exists because "a tribunal disinterested in the outcome and committed to procedures designed to ensure its own

8

independence," which are *sine qua nons* of judicial proceedings, "are not inherent in executive detention orders or executive review procedures." *Boumediene*, 553 U.S. at 783. The writ of habeas corpus, therefore, operates as "a critical check on the Executive, ensuring that it does not detain individuals except in accord with law." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (plurality opinion).

Critical though this writ may be to the federal courts' role as custodians of individual liberty, it does not provide them with carte blanche to embark on boundless intrusions into the affairs of the Executive. *See Boumediene*, 553 U.S. at 793 (recognizing that "[p]ractical considerations and exigent circumstances inform the definition and reach of the law's writs, including habeas corpus" and warning against "an impractical and unprecedented extension of judicial power" into matters of the Executive). The Executive Branch "has "*exclusive* authority and *absolute* discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974) (emphasis added) (citations omitted). That authority and discretion spring from the Constitution, *see* U.S. Const. art. II, § 1, cl. 1; § 3 (vesting the "executive Power" in the President and stating that the President "shall take Care that the Laws be faithfully executed"), and they "extend[] to the immigration context," where they encompass decisions over whether to "arrest," "prosecute," and, ultimately, "remove a noncitizen from the United States," *United States v. Texas*, 599 U.S. 670, 679 (2023).

The Executive's "enforcement discretion" in the immigration arena "implicates not only 'normal domestic law enforcement priorities' but also 'foreign-policy objectives.'" *Id.* at 679 (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490–91 (1999)). The federal courts must give "due regard for the deference owed to the Executive Branch in the conduct of foreign affairs. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). In fact, the Executive's

dominion over matters of immigration and Congress's prerogative to legislate on these matters are so complete that, together, they have come to embody the plenary power doctrine:

> It is pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so *exclusively* entrusted to the political branches of government as to be *largely immune from judicial inquiry or interference*.

*Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) (emphasis added) (footnote omitted); *see* U.S. Const. art. I, § 8, cl. 4 (empowering Congress "[t]o establish an uniform Rule of Naturalization"); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) ("'[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." (alteration in original) (quotation omitted)). Under the plenary power doctrine, the Secretary of the Department of Homeland Security is "charged with the administration and enforcement" of all "laws relating to the immigration and naturalization of aliens," 8 U.S.C. § 1103(a)(1). "[T]he Constitution gives the political department of the government plenary authority to decide which aliens to admit . . . ; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (internal quotations and citations omitted).

Mr. Hernandez Garcia invokes the Fifth Amendment's Due Process Clause, which precludes the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. The Due Process Clause applies to citizens and non-citizens alike when the Executive seeks to deprive them of liberty. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). The Clause's applicability, however, is the beginning of the analysis, not the end. The procedural due-process right that Mr.

Hernandez Garcia presses requires him to identify a protected liberty or property interest of which he has been deprived. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). The merits of his petition turn on whether his deferred-action status, which is best described as a discretionary act of executive forbearance, creates such a protectable interest.

The writ of habeas corpus is the means by which judicial review of executive detention occurs, and the writ's availability is what permits the Court to consider Mr. Hernandez Garcia's petition at all. *Zadvydas*, 533 U.S. at 688 (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" under the INA). Before turning to the merits of his petition, however, the Court must address Respondents' argument that statutory provisions of the Immigration and Nationality Act divest the Court of jurisdiction to consider it.

### B.      Respondents' Jurisdictional Challenges

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress[.]" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citation omitted). The federal habeas corpus statute, § 2241, confers jurisdiction on federal courts to hear cases in which a detainee claims that the Executive is holding him "[1] in custody [2] in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Neither party disputes that Mr. Hernandez Garcia is in the Executive's custody, and Mr. Hernandez Garcia alleges and argues that his detention at the Executive's hands violates the Constitution. The Court therefore has jurisdiction under § 2241.

But Congress has enacted several statutory provisions that foreclose judicial review—even habeas review—of the Executive's decisions or actions in the immigration context, and Respondents maintain that one of those provisions, 8 U.S.C. § 1252 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, divests the Court of jurisdiction to consider Mr. Hernandez Garcia's habeas petition.

      1.   Jurisdiction under 8 U.S.C. § 1252(g)

"The INA governs how persons are admitted to, and removed from, the United States," *Pereida v. Wilkinson*, 592 U.S. 224, 227 (2021), and "Congress enacted 8 U.S.C. § 1252(g) to limit the jurisdiction of federal courts," *Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018); *see Reno*, 525 U.S. at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."). In fact, "Congress stripped the courts of jurisdiction to grant habeas relief in § 1252(g)," *Hamama*, 912 F.3d at 876, which in full states:

> (g) Exclusive jurisdiction
>
> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] *execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). Respondents assert that this statutory language bars the Court's review of Mr. Hernandez Garcia's habeas petition on jurisdictional grounds because, in his petition, he is contesting the execution of a removal order. [Resp'ts' Mot. for Recons., Doc. 8, at 3–5]; *see Hamama*, 912 F.3d at 877 (holding that the district court lacked jurisdiction to enjoin the execution of a removal order).

Section 1252(g) does not deprive the Court of jurisdiction. This statutory provision is a "narrower" provision, *Reno*, 525 U.S. 482, and bars challenges "to *just* the[] . . . *specific* action[]" of executing a removal order itself, *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (emphasis added) (citing *id.* at 482–83). In other words, it does not "sweep in *any* claim that can technically be said to 'arise from'" the execution of a removal order. *Id*. (emphasis added). Mr. Hernandez Garcia does not challenge the merits of his removal order in any way, nor does he challenge the Executive's decision or discretion to execute that removal order in the first instance. Rather, he alleges and argues that his subsequent grant of deferred-action status renders his removal order not executable and that its termination without "an individualized determination" violates the Due Process Clause. [Am. Compl., Doc. 11, at 14; *see id.* ¶ 58 (claiming that his deferred-action status acts "a shield against an execution of a removal order" and "prevents immigration authorities from physically removing" him from the United States); *id.* ¶ 62 (alleging that "execution of [the] order of removal violates his protection under deferred action"); Pet'r's Resp., Doc. 23, at pg. 4 (contesting "the Government's present authority to restrain and remove him based on his Deferred Action….").

That makes all the difference. *See Enriquez-Perdomo v. Newman*, 54 F.4th 855, 864–65 (6th Cir. 2022) ("By definition, when a removal order is not subject to execution, government officials have no authority, discretionary or otherwise, to execute it. . . . Consequently, [the plaintiff's] removal order was not subject to execution," "Defendants did not have authority to arrest or detain her," and "§ 1252(g) does not preclude [her] claims because her removal order was not executable." (footnote omitted)); *Arce v. United States*, 899 F.3d 796, 800–01 (9th Cir. 2018) ("[T]he Attorney General lacked the authority to execute the removal order because of the stay of removal issued by our court. . . . Where the Attorney General totally lacks the authority to

13

effectuate a removal order, § 1252(g) is simply not implicated."); *see also Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004) ("[The petitioner] is seeking to enjoin the Attorney General from executing a *valid* order of deportation. The district director's decision is therefore protected from subsequent judicial review under § 1252(g)." (emphasis added)).

Although the Executive's "enforcement of long-standing removal orders falls squarely under [its] decision to execute removal orders" and is therefore "not subject to judicial review" under § 1252(g), *Hamama*, 912 F.3d at 874 (citing *Reno*, 525 U.S. at 483), § 1252(g) does not impede judicial review of a challenge to executive detention when the detainee has received a discretionary form of affirmative relief from removal. *See Enriquez-Perdomo*, 54 F.4th at 863–64 ("[The plaintiff's] removal order was not subject to execution because she had DACA [deferred-action] status. . . . Although the government was free to terminate that relief, it did not, and [her] arrest and detention despite that relief were unauthorized. Accordingly, § 1252(g) does not preclude [her] claims because her removal order was not executable." (footnote omitted)). Nor does it impede judicial review of a challenge to the termination of a discretionary form of affirmative relief from removal. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("The [government's] . . . revo[cation] [of] a deferred action program with associated benefits[] is not a decision to . . . 'execute' a removal order" under § 1252(g).); *Gama v. Bondi*, No. 2:25-cv-01925-TL, 2025 WL 3559942, at *3 (W.D. Wash. Dec. 12, 2025) ("Petitioner's claims arise from USCIS's grant of deferred action, combined with ICE's refusal to honor that grant, rather than the execution of a removal order. Accordingly, Section 1252(g) does not strip the Court of jurisdiction.").

In short, when a non-citizen possesses a form of (1) discretionary, (2) affirmative relief from removal (3) under a program (4) with associated benefits, § 1252(g) does not stand in the

14

way of that non-citizen's challenge to the termination of that relief or to executive detention that comes despite his possession of that relief, *Regents*, 591 U.S. at 19; *Enriquez-Perdomo*, 54 F.4th at 863–64, and Mr. Hernandez Garcia satisfies all four criteria. First, grants of deferred-action status are indisputably discretionary acts. *See Mason v. Mukasey*, 306 F. App'x 897, 902 (6th Cir. 2009)(citing *Reno*, 525 U.S. at 484). Second, they are indisputably forms of affirmative relief from removal. *Reno*, 525 U.S. at 484 ("Approval of deferred action status means that . . . no action will thereafter be taken to proceed against an apparently deportable alien[.]" (quotation omitted)); *Barrios Garcia v. DHS*, 25 F.4th 430, 435 (6th Cir. 2022) (stating that "deferred-action status would protect [the plaintiffs] from removal from this country"). Third, Mr. Hernandez Garcia's grant of deferred-action status is under the auspices of Congress's "SIJ program." *See* U.S. Citizenship & Immigr. Servs., *Policy Alert, PA-2022-10, Special Immigrant Juvenile Classification and Deferred Action* at 1, 3 (declaring that "USCIS will consider granting deferred action on a case-by-case basis to noncitizens classified as SIJs," "consistent with the congressional intent in creating the SIJ program"); *see also A.C.R. v. Noem*, ___ F. Supp. 3d ___, 2025 WL 3228840, at *2 (E.D.N.Y. Nov. 19, 2025) (stating that USCIS, under PA-2022-10, "announced a deferred action program for individuals with SIJS"). And fourth, deferred-action status comes with the benefit of possible eligibility for employment, *see* 8 U.S.C. § 274a.12(c)(14) (identifying non-citizens with deferred-action status as a class of non-citizens who may be eligible for employment authorization), which Mr. Hernandez Garcia, who was working at a construction site when ICE arrested him, appears to have obtained, *see* [Am. Pet., Doc. 11, ¶¶ 20–21].

Mr. Hernandez-Garcia therefore petitions this Court for review of conduct outside of § 1252(g)'s orbit: conduct relating to the manner of the termination of a discretionary form of affirmative relief from removal, *see* [Pet'r's Resp., Doc. 23, at 1 ("The termination of his deferred

action in this manner was illegal."), and to the constitutional harm emanating from it, [*id.* at 4 ("Mr. Garcia challenges the Government's present authority to restrain and remove him based on his Deferred Action that he had at the time of his apprehension and that was subsequently terminated without due process[.]"].

Respondents attempt to distinguish *Enriquez-Perdomo* on two grounds: that the deferred action there was granted under the Deferred Action for Childhood Arrivals program, governed by 8 C.F.R. §§ 236.21–236.25 rather than § 274a.12(c)(14), and that the government there did not terminate the recipient's deferred-action status. [Return of Writ, Doc. 15, at 17 n.7]. Neither distinction defeats jurisdiction at the moment of arrest. The Sixth Circuit's holding in *Enriquez-Perdomo* rested on the textual meaning of "execute removal orders" in § 1252(g). That is, "removal orders" should be read alongside "execute" to mean "*executable* removal orders," and that an order subject to deferred action is not executable. 54 F.4th at 863–65 (emphasis in original). This analysis does not focus on whether a regulation created the deferred action; it focuses on whether deferred action was in force at the moment the executive sought to act on the removal order. The DACA-versus-SIJS-DA distinction therefore goes to the source of the deferred action, not to *Enriquez-Perdomo*'s reasoning. The post-arrest termination of Mr. Hernandez Garcia's deferred-action status likewise does not change the jurisdictional posture at the moment of arrest. At that moment, the deferred action was in force, and Respondents' own concession acknowledges that the termination notice of his deferred action status occurred *after* Mr. Hernandez Garcia was taken into custody. [Return of Writ, Doc. 15, at pg. 3 n.2]. The post-arrest termination of his deferred action status does not retroactively render his removal order executable at the time of his arrest for purposes of § 1252(g).

16

In sum, "some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution,'" *I.N.S. v. St. Cyr*, 533 U.S. 289, 300 (2001) (quoting *Heikkila v. Barber*, 345 U.S. 229, 235 (1953)); *see Zadvydas*, 533 U.S. at 695 (recognizing that the government's plenary power "is subject to important constitutional limitations" (citation omitted)), and Mr. Hernandez Garcia's case is a case that requires it. Although Respondents retained discretion to terminate his deferred-action status at any time, *see Enriquez-Perdomo*, 54 F.4th at 863 ("[T]he Government was free to terminate that relief[.]"), his possession of that status at the time of his arrest rendered his removal order not executable, for jurisdictional purposes only, *see id.* at 865 ("[The plaintiff's] removal order was not subject to execution, and Defendants did not have authority to arrest or detain her."). Section 1252(g) therefore does not prevent the Court from exercising its statutory jurisdiction over Mr. Hernandez Garcia's habeas petition.

### 2. Jurisdiction under 8 U.S.C. § 1252(a)(5) and (b)(9)

Respondents raise additional jurisdictional arguments under other provisions of § 1252, namely § 1252(a)(5)[9] and § 1252(b)(9),[10] but those arguments fare no better. When Congress stripped the federal courts of jurisdiction to grant habeas relief in § 1252(g), it extended to non-citizens an alternative method for contesting the legality of a removal order: filing a petition for

---

[9] "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory)." 8 U.S.C. § 1252(a)(5).

[10] "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." *Id.* § 1252(b)(9).

17

review of that removal order in the appropriate federal court of appeals. 8 U.S.C. § 1252(a)(1), (5). Under § 1252(a)(5), that method is the "sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5).

Again, though, Mr. Hernandez Garcia is not challenging the merits of his removal order, so this Court, by exercising its statutory jurisdiction over his habeas petition, would not intrude on the court of appeals' "sole and exclusive" jurisdiction. *Id.*; *see Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005) ("[I]n an appeal from an order of removal, we have jurisdiction to review . . . claims 'properly presented to the BIA and considered *on their merits*.'" (emphasis added) (citation omitted)). Section 1252(a)(5) therefore does not bar the Court from exercising its statutory jurisdiction over Mr. Hernandez Garcia's habeas petition.

Neither does § 1252(b)(9). While § 1252(b)(9) is broader than § 1252(a)(5) because it dispossesses courts of jurisdiction over "all questions of law and fact," both "constitutional and statutory," that "aris[e] from" an "action or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), it does not "swallow[] all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien," *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 626 (6th Cir. 2010) (quoting *Aguilar v. U.S. Immigr. & Customs Enf't of the Dep't of Homeland Sec.*, 510 F.3d 1, 10 (1st Cir. 2007)). Some examples of claims that § 1252(b)(9) does swallow include claims arising from "decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Reno*, 525 U.S. at 482.

Mr. Hernandez Garcia's grant of deferred-action status was a discretionary act, which occurred nearly six years after the official removal proceedings that culminated in his removal order. USCIS granted him that status independently from those removal proceedings. His claim

18

that Respondents' termination of his deferred-action status is unconstitutional and requires his release from detention is distinct from a claim arising from the far-removed proceedings that produced his removal order. *See I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("[A] deportation hearing is intended to provide a streamlined determination of eligibility to remain in this country, nothing more."); *Hamdi*, 620 F.3d at 627 ("[R]emoval proceedings are confined to determining whether a particular alien should be deported." (quoting *Aguilar*, 510 F.3d at 627)). Section 1252(b)(9) therefore does not preclude the Court from exercising its statutory jurisdiction over Mr. Hernandez Garcia's habeas petition, and having now rejected Respondents' jurisdictional challenges, the Court will address the merits of his petition.

### C.      The Merits of Mr. Hernandez Garcia's Habeas Petition

The phrase due process of law means is a constitutional guarantee that prohibits the government from depriving persons of life, liberty, or property "except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Under the Due Process Clause, a person's right to due process is twofold, consisting of "categories of substance and procedure," each of which is "distinct." *Id.*

#### 1.   Substantive Due Process

The category of substantive due process deals with "only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012) (internal quotation mark and quotation omitted). They are cut from the cloth of "certain inalienable Rights, that among these are Life, Liberty and the pursuit of Happiness." *The Declaration of Independence* para. 2 (U.S. 1776). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due

19

Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation omitted).

But the federal courts are "reluctant to expand the concept of substantive due process," and they take "the utmost care whenever asked to break new ground in this field." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (citation omitted). An analysis of a substantive due-process claim "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993); *see Collins*, 503 U.S. at 125 ("It is important, therefore, to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake[.]").

Mr. Hernandez Garcia makes no appreciable allegation or argument that Respondents violated his substantive due-process rights. In alleging that his deferred-action status acts as "a shield against an execution of a removal order," [Am. Pet., Doc. 11, ¶ 58], he presumably means, to the extent he is raising a substantive due-process claim, that he has a substantive due-process right to be free from the execution of a removal order while in deferred-action status. Again, though, he does not specifically allege or argue that he suffered any deprivation of a substantive due-process right, and he fails to cite any case showing that a non-citizen enjoys a substantive due-process right to liberty while in deferred-action status.

In any event, the substantive due-process inquiry is properly directed at the actual deprivation of his liberty, that is, his detention. But detention pursuant to a valid final removal order is authorized by 8 U.S.C. § 1231 and has long been understood not to offend substantive due process. *See Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Flores*, 507 U.S. at 306 (noting that Congress has the authority to detain aliens pending their deportation hearings). Mr. Hernandez Garcia's

20

removal order is final and lawful, and his detention under § 1231 is authorized by law. The Court therefore finds no basis to conclude that Respondents violated Mr. Hernandez Garcia's substantive due-process rights under the Fifth Amendment.[11]

### 2. Procedural Due Process

The Due Process Clause of the Fifth Amendment declares that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." Freedom "from government custody, detention, or other forms of physical restraint . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha*, 504 U.S. at 80). And the Due Process Clause "clothes individuals with the right to both substantive and procedural due process." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (citations omitted). But the procedural due-process guarantee of the Fifth Amendment does not attach to every governmental action that affects a person adversely. In other words, "[t]o prevail on its procedural due process claim, the plaintiffs must prove that they had a definite liberty or property interest and that such interest was abridged without appropriate process." *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995). When a protected interest is at stake, courts determine the process due by weighing the private interest, the risk of erroneous deprivation under the procedures used, and the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

---

[11] The Court acknowledges tension between the jurisdictional analysis and the merits analysis that warrants a brief explanation. The Court has held that, while in force, Mr. Hernandez Garcia's deferred-action status rendered his removal order non-executable for purposes of § 1252(g). It now holds that the same status creates no constitutionally protected liberty or property interest under *Roth*. The two holdings are not in conflict. The first is statutory: it gives effect to the textual reading of "execute removal orders" in § 1252(g) adopted in *Enriquez-Perdomo*, 54 F.4th at 863–65. The second is constitutional. It addresses whether the terms of the agency's grant gave rise to a "legitimate claim of entitlement" under *Roth*, 408 U.S. at 577. The two categories need not be coextensive. A discretionary grant may be sufficient to prevent the executive from executing a removal order without at the same time creating a constitutionally protected interest in that deferred action.

21

But the *Mathews* inquiry presupposes a protected interest. *See Roth*, 408 U.S. at 569–71. Where none exists, the balancing never begins.

In the immigration context, the Sixth Circuit has noted that "when suspension of deportation is discretionary, it does not create a protectable liberty or property interest." *United States v. Estrada*, 876 F.3d 885, 887 (6th Cir. 2017) (quoting *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000)); *see also Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001) ("The failure to be granted discretionary relief does not amount to a deprivation of a liberty interest.").

Applying that framework, Mr. Hernandez Garcia has no protected liberty or property interest in continued deferred-action status. Deferred action is, at its foundation, a discretionary act that by its own terms confers no legally enforceable rights on the recipient. The notice granting Mr. Hernandez Garcia's deferred-action status states explicitly that "[y]our grant of deferred action will remain in effect for a period of four years from the date of this notice, *unless terminated earlier by USCIS*." [Notice of Deferred Action, Doc. 1-1, at 1 (emphasis added)]. The agency's Policy Manual reinforces that reservation: a grant of deferred action "remains valid for the authorized period, unless terminated by USCIS, on a case-by-case basis, as a matter of discretion." 6 USCIS-PM J.4(G)(1). The Termination Notice in this case echoes the same framework: "Deferred action is a discretionary determination . . . . You may not appeal or move to reopen/reconsider this decision." [Termination Notice, Doc. 6-1, at pg. 1]. A government benefit that is explicitly revocable at the agency's case-by-case election, with no avenue for appeal or administrative reconsideration, cannot be the foundation of a "legitimate claim of entitlement" under *Roth*. 408 U.S. at 577. With "no constitutionally-protected liberty interest in obtaining discretionary relief from deportation," *Estrada*, 876 F.3d at 887, there can be no procedural due process claim.

22

Mr. Hernandez Garcia relies on the line of cases holding that persons released from custody subject to conditions have a protected liberty interest in the continuation of that conditional freedom. *See Morrissey v. Brewer*, 408 U.S. 471 (1972) (parole); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (probation); *Young v. Harper*, 520 U.S. 143 (1997) (preparole release). Each of those cases is distinguishable. In *Morrissey, Gagnon,* and *Young*, the recipient held conditional liberty under terms that did not reserve an unfettered right to revoke. Rather, revocation was governed by specific procedures in place and turned on misconduct of the recipient. Freedom was conditioned on compliance with specific rules. That is not the case here. Mr. Hernandez Garcia's grant of deferred action is based on the exact opposite. As discussed above, the notice expressly preserved the agency's right to revoke the deferred action at any time, and the Termination Notice forecloses review. A benefit explicitly revocable at the agency's election is not the same as the conditional liberty interest that *Morrissey* and cases similar protected.

Mr. Hernandez Garcia also argues that his substantial connections to the United States generate a protected interest in continued deferred action. There is no dispute that the Due Process Clause applies to him as a person present in the United States. *Zadvydas*, 533 U.S. at 693. But whether the Due Process Clause applies to him is a different question from whether he actually has a protected interest in continuing in deferred action status, a discretionary benefit. And his connections, whether substantial or not, do not alone entitle him to the benefit of deferred action status, and those connections alone do not create a protected liberty interest.

Mr. Hernandez Garcia's procedural due-process claim therefore falters at the start. Without a protected liberty or property interest in continued deferred-action status, Respondents owed him no notice or opportunity to be heard before terminating it. His detention under 8 U.S.C. § 1231 pursuant to a lawful final removal order is authorized by statute, and he has not established that he

23

is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). His habeas petition fails on the merits.

### D. Mr. Hernandez Garcia's Other Claims

The Court's analysis up to this point has been in response to Mr. Hernandez Garcia's pursuit of habeas relief. His pleading is a habeas petition, in substance and form: he titles his pleading as a "Petition for Writ of Habeas Corpus," alleges he "has been unlawfully detained," and requests his "release . . . from custody." [Am. Pet., Doc. 11, at 1, 14]. Despite styling his pleading as a habeas petition, challenging his confinement as illegal, and seeking release from custody, he tacks on other civil claims to his habeas claim: an alleged violation of the APA and alleged retaliatory conduct in violation of the First Amendment. Respondents argue that he "improperly attempts to shoehorn" these additional civil claims "into his habeas petition." [Return of Writ, Doc. 15, at pg. 18]. The Court agrees.

Claims that "necessarily imply the invalidity" of a petitioner's confinement fall within the "core" of habeas and "must be brought in habeas." *J.G.G.*, 604 U.S. at 672. The Sixth Circuit applies the converse rule with equal force: non-core claims may not be tacked onto a § 2241 petition. *Hicks v. Federal Bureau of Prisons*, No. 16-3907, 2017 WL 3468368, at *2 (6th Cir. June 5, 2017) ("[The petitioner] may not use § 2241 to pursue a claim concerning a violation of his rights under the First Amendment." (citing *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013))); *see also Somerville v. Dewalt*, No. 09-CV-68-KKC, 2009 WL 649063, at *7 (E.D. Ky. Mar. 11, 2009). Mr. Hernandez Garcia's First Amendment retaliation claim falls on the *Hicks* side of that line. It does not challenge the legality of his detention; it challenges the agency's motive for terminating his deferred-action status. The claim must be brought, if at all, in a separate civil action under 28 U.S.C. § 1331. The APA claim fails for an additional reason. The APA provides

a cause of action only when there is no other "adequate remedy in a court." 5 U.S.C. § 704; *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir.1997). Habeas corpus is the adequate—and exclusive—remedy for the relief that Mr. Hernandez Garcia seeks here. *See J.G.G.*, 604 U.S. at 674 (Kavanaugh, J., concurring) ("I agree with the Court that habeas corpus, not the APA, is the proper vehicle here."). Mr. Hernandez Garcia's APA claim and First Amendment claim are therefore **DISMISSED WITHOUT PREJUDICE**.

## IV.    CONCLUSION

The Court does not minimize the hardship that detention and the prospect of removal present, nor does it question the substantial connections Mr. Hernandez Garcia has developed to this country. But the Constitution's guarantee of procedural due process does not attach to every governmental action that affects a person adversely. It attaches only to the deprivation of a protected liberty or property interest. Deferred-action status, granted as a matter of administrative discretion and revocable at the agency's election, is not such an interest. Respondents were therefore not constitutionally obligated to provide process before terminating it. And because his detention rests on a lawful final removal order, it is authorized by 8 U.S.C. § 1231.

Accordingly, it is **ORDERED** that:

1. Mr. Hernandez Garcia's Amended Petition for Writ of Habeas Corpus [Doc. 11] is **DENIED**;

2. Respondents' Motion for Reconsideration [Doc. 8] is **DENIED**;

3. The Court's stay against enforcement of Mr. Hernandez Garcia's removal order is **LIFTED**;

4. A judgment order consistent with this Memorandum Opinion and Order shall enter; and

5. The Clerk of Court is **DIRECTED** to administratively close this case.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge